Filed 6/30/16  P. v. Nia P. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>NIA P.,<br><br>       Defendant and Appellant. | A146303<br><br>(Solano County<br>Super. Ct. No. J042797) |

After a contested jurisdictional hearing, the juvenile court found that appellant, Nia P., then a minor, had committed simple assault and battery, misdemeanor violations of Penal Code sections 240 and 242.[1]  At the disposition hearing on September 15, 2015, the juvenile court placed appellant on six months informal probation, without declaring her a ward of the court.  Appellant's court-appointed counsel has filed a brief seeking our independent review of the record, pursuant to *People v. Wende* (1979) 25 Cal.3d 436, to determine whether there are any arguable issues for review.  Appellant has also been informed of her right to file supplemental briefing, and she has not done so.  After our independent review of the record, we find no errors or other issues requiring further briefing, and we affirm.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

## FACTUAL AND PROCEDURAL BACKGROUND

A juvenile wardship petition was filed on January 6, 2015, alleging that on December 3, 2014, appellant had committed two felonies: assault with a deadly weapon (§ 245, subd. (a)(1)), and battery with serious bodily injury (§ 243, subd. (d)).

A contested jurisdictional hearing was held on July 31, August 3, and August 4, 2015. Both sides called multiple witnesses and introduced evidence concerning a hand-to-hand fight between appellant and another minor, D.G., at Allan Witt Park in Fairfield on December 1, 2014.

<u>Prosecution Testimony</u>

Appellant's counsel has so thoroughly described the prosecution testimony from the contested jurisdictional hearing in her brief that we set it forth below, with minor stylistic changes and without the headings.

"On the afternoon of the incident, D.G. received a phone call from Lisa F., her cousin. [Lisa] told D.G. that she had seen appellant and her friend Chantell at Wal-Mart, and that appellant had approached [Lisa] about wanting to fight. [Lisa] testified that appellant and Chantell approached [Lisa] and her friend Curtis at Wal-Mart, and asked them if Dacoiyah and D.G. had a problem with them, and [Lisa] said yes. After they left the store, [Lisa] saw that appellant and Chantell had added D.G. and Dacoiyah on Twitter, asking them to fight. [Lisa] called D.G. and told her this and D.G. became angry. Chantell messaged [Lisa] and the girls arranged to meet at Allan Witt Park.

"D.G. told her mother that she was going to fight appellant because she was tired of the back and forth. D.G's mother told her not to go, but D.G. went anyway. When D.G. knew that appellant was going to be there, she expected to fight her.

"D.G. left from her house with Yvonne in Yvonne's car and went to Allan Witt Park around 3:30 or 4:00 p.m. [Lisa], D.G., Dacoiya[h] and Yvonne arrived in Yvonne's car and they waited outside Yvonne's car for appellant and Chantell to arrive.

"D.G. identified appellant in the courtroom as someone she 'had problems with.' [¶] . . .

2

"When appellant pulled up, D.G., Dacoiyah and [Lisa] were out of their car. As appellant and Chantell got out of the car, D.G. started walking toward her. When she was within two feet of appellant, D.G. saw that appellant had a pink ceramic object about the size of a hockey puck in appellant's hand and D.G. started backing up.

"Appellant walked up to [D.G.] and hit her with the object. Appellant used an overhand-type of throwing motion to hit D.G. with the ceramic; she hit her to the left side of her eye, above the orbit, near the brow bone. Appellant hit D.G. twice with the object, then dropped it, and the girls began fighting, punching each other. [A]ppellant threw about seven punches and D.G. twelve. The fight did not last long, about one minute.

"[Lisa] testified that appellant drove up in a black Lexus, with Chantell, [Martiso], Yuron, and Martiso's brother in her car. [Lisa] testified that appellant got out of her car, appellant and D.G. approached each other and met halfway, and then appellant immediately hit D.G. [Lisa] saw appellant hit D.G. twice on the head with a ceramic ashtray and it cracked on D.G.'s head. D.G. hit back in self-defense. The girls were hitting each other repeatedly. [Lisa] did not know how the fight stopped. [Lisa] helped D.G. into the car and she saw pieces of the ashtray on the ground.

"Ms. Gray, D.G.'s mother, testified that she arrived as the fight was starting. She observed Chantell running toward Dacoiyah, and Dacoiyah ran away from the men that were in appellant's car. [¶] . . .

"After the fight broke up, D.G.'s mother drove D.G. directly to North Bay Medical Center for medical treatment for her injuries. When she was in the car with her mother, D.G. saw herself in the mirror; her eye was very swollen and a little bloody. She was in pain. D.G.'s eye was swollen shut for three days, and both eyes were discolored for approximately two weeks. D.G. spoke with a police officer at the hospital; the officer took pictures of her, which were entered into evidence. The pictures showed swelling around her eye and some bruising. D.G. got migraines after the incident, every day for three weeks. [¶] . . .

"The day after the fight, D.G. informed the investigating Officer Stockton that she pulled appellant's hair, threw punches and uppercuts at appellant, and that it was mutual combat.

"Within days of the fight, appellant's car was vandalized with gunshots, Lisa threw a soda can at appellant's car, and Lisa violated her probation by making criminal threats against appellant and saying she was going to kill her."

Reduction of Charges to Misdemeanors

At the close of the prosecution's case, the juvenile court granted appellant's motion for a directed verdict on the felony charges because the prosecution had not established the "deadly weapon" element of count 1, or the serious bodily injury element of count 2. The court reduced the charged offenses to the lesser included offenses of simple assault and battery, both misdemeanors.

Defense Testimony

The defense elicited testimony about numerous incidents between appellant and D.G. that preceded the fight, including that D.G. made threats against appellant on Twitter, saying she was going to "find this bitch Nia and stab her." About one month before the fight, D.G. called appellat and confronted her about coming to a high school football game so "she could get her ass beat." Appellant just drove by in a car with others, and the girls did not fight that night. D.G. admitted that she has gotten into fights before.

Appellant testified on her own behalf that she did not "verbally" agree to fight D.G., but that she "agreed to fight her when I went to the park, of course" on the day of the incident. She knew D.G. wanted to fight based on what Lisa had told her at the Wal-Mart and from the tweets that she received shortly thereafter exhorting her to come to Allan Witt Park to fight.

Appellant claims that D.G. ran over to her car and opened the car door, and as appellant got out of the car D.G. punched her in the face. Appellant conceded that the punch left no marks on her face, but said there was some redness when she went to work immediately after the fight; the redness was gone by the next day. After that hit,

4

appellant hit D.G. "right after," and the girls engaged in "mutual combat." Appellant admitted that when she went to the park, she thought she was going to get into a fight. Appellant denied using a weapon or a ceramic object to hit D.G., and said she used only her hands. She wore a ring and was wearing pink nail polish. Her initial punch to D.G. caused appellant to break three nails on her right hand. She claimed never to have been in a fight before or to have hit anyone before she hit D.G. that day.

Appellant's friend Chantell testified about the fight and the events leading up to it, stating that she eventually separated D.G. and appellant to stop the fight. Chantell testified that D.G.'s mother was cheering for D.G. to beat up appellant. Chantell testified that after the fight, D.G. tweeted and said she was beating up appellant.

Motion to Suppress Minor's Statement

Appellant moved to suppress a statement she had made to Officer Paula Gulian from the Fairfield Police Department two days after the incident on the grounds that although she had been given her *Miranda* rights, her statement was not voluntary because her mother influenced her to speak to the police officer. Appellant was about two months away from being 18 years old at the time she gave her statement. The juvenile court heard testimony from Gulian and appellant's mother, as well as oral argument from counsel, and concluded under the totality of the circumstances that appellant's statement was voluntary and that her statements were not coerced by the police.

After the motion to suppress was denied, Officer Gulian testified that appellant told her that she hit D.G. with a "ceramic thing." Gulian did not know if appellant told her what the "ceramic thing" was, and does not recall any other comments by appellant about it. The juvenile court later commented that because he had "1118'd"[2] the weapons allegation, Officer Gulian's testimony about appellant's statements was not relevant, because all she had asked appellant about was whether the weapon was ceramic.

---

[2] Presumably referring to section 1118 regarding judgments of acquittal on a defendant's motion in a case tried to the court.

5

Juvenile Court Findings

After listening to testimony, hearing closing argument and considering relevant jury instructions, the juvenile court found that the allegations of the petition in count 1, misdemeanor battery, and in count 2, misdemeanor assault, were true beyond a reasonable doubt. The court stated that apellant and D.G. agreed to go to the park where they knew they were going to be in a fight, and they were engaged in mutual combat. "[Appellant] cleaned [D.G.'s] clock. She used something. The police officer never when talking to her figured out what it was. . . . [T]he People weren't able to prove beyond a reasonable doubt that it was a deadly weapon, but she hit her with something, which explains why somebody who's never been in a fight before, according to her, threw one punch and left a contusion over half of [D.G.'s] face."

Addressing appellant, the court stated, "Now there were different ways to handle this. You could have got a restraining order or you could have called the police for the stuff on Twitter. [¶] I realize that, you know, the next day your car gets shot up, and obviously there's some bad feelings about that, but that's not in front of me here today. If the DA could prove that against whoever did it, I'm sure they would file it, but the only thing that's in front of me today is an assault and battery, because these two girls had this fight and [appellant] essentially escalated the fight in the midst of it."

At the disposition hearing, the court considered the probation report and the statements of counsel. Appellant was placed on six months informal probation without wardship under Welfare and Institutions Code section 725, subdivision (a), and placed in the custody of her family.

## DISCUSSION

We have reviewed the record on appeal in its entirety and conclude that there are no meritorious issues to be argued.

Appellant was at all times effectively represented by counsel, who protected her rights and interests. In fact, defense counsel persuaded the juvenile court judge to direct a verdict on the felony counts charged, and to reduce the charges to simple assault and simple battery.

6

No ruling by the juvenile court admitting or denying evidence amounted to an abuse of discretion or legal error.

The juvenile court's disposition is supported by substantial evidence.

We see no error in the disposition in granting six months informal probation under Welfare and Institutions Code section 725, subdivision (a), without declaring appellant a ward of the juvenile court.

We conclude there are no arguable issues within the meaning of *People v. Wende*, *supra*, 25 Cal.3d 436.

## DISPOSITION

The judgment is affirmed.

_____

Miller, J.

We concur:


_____

Richman, Acting P.J.


_____

Stewart, J.


A146303, *People v. Nia P.*